IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDREW HARDY MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:19-cv-00105-K-BT |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant United States of America has filed a Motion for Summary Judgment (MSJ) in this medical negligence case brought *pro se* Plaintiff Andrew Hardy Moore. Because Moore lacks expert testimony sufficient to create a genuine issue of material fact in support of his claim, the Court should GRANT the United States' Motion (ECF No. 49) and DISMISS Moore's claims with prejudice.

**Background**

Moore brings this lawsuit under the Federal Tort Claims Act (FTCA). He alleges a physician's assistant (PA) at the United States Department of Veterans Affairs Medical Center in Dallas (the "Dallas VA") negligently diagnosed and treated his type-2 diabetes in February 2017. MSJ Br. 2 (ECF No. 50). This misdiagnosis and mistreatment purportedly led to Moore's subsequent hospitalization at Medical City of Arlington. Compl. 2 (ECF No. 3); *see generally* Compl. App. pt. 2 (ECF No. 5-2). Further, as a result of the PA's misdiagnosis,

1

Moore allegedly suffered pain and memory loss. Compl. 2. By this lawsuit, Moore seeks $4.6 million in damages.

Moore has a medical history fraught with physical health conditions. *See generally* MSJ App. (ECF No. 51-1). In 2016, Moore suffered from, among other conditions, hypertension, type-2 diabetes, and anemia. *Id.* at 8. And according to his medical records, Moore controlled his type-2 diabetes with diet and exercise. *Id.*

On February 28, 2017, Moore presented to the Dallas VA for a routine follow-up visit. *See id.* at 10-12. Moore met with a registered nurse. *Id.* at 10. Moore complained, over the prior two and half months, he had "a sickly taste in his mouth" and was "unintentionally" losing weight while eating normally with a good appetite. *Id.* According to Moore, "[w]hile sitting in" his office chair, "he [was] resting his head on his hand and not sitting upright." *Id.* Moore further complained he "every day" had "blood" on the "roof of his mouth" and "he would hack up thick, sputum that's mostly blood." *Id.* Moore also complained of fatigue. *Id.* Moore was referred to and examined by a PA. *Id.*

The PA ordered lab work. *Id.* And after reviewing the lab work and assessing Moore's unexplained weight loss and other complaints, the PA referred Moore for a gastroenterology consult and an endoscopy. *Id.* at 12. Moore was then set to follow up with the PA in two weeks. *Id.*

Four days later, Moore presented himself to Medical City of Arlington's emergency department complaining of dizziness, weakness, shortness of breath,

and weight loss. Resp. Supp. 2 (ECF No. 60); *see id.* at 13. Moore's glucose level was greater than 700. MSJ App. 13. The hospital gave Moore insulin, and he was admitted for several days. *Id.* at 13. Moore now claims he suffers from memory loss caused by ketoacidosis as a result of the Dallas VA's failure to timely diagnose and treat his type-2 diabetes during the February 28 visit.

Moore filed a complaint with the Texas Physician Assistant Board (the "Board") regarding the PA's medical negligence. MSJ Resp. 4 (ECF No. 55). The Board held an informal show-compliance proceeding and settlement conference on June 21, 2019. *Id.* The PA settled the matter with the Board without admitting or denying the Board's "Findings and Conclusions of Law . . . to avoid the cost, expense, and uncertainty of litigation." *Id.* Without any litigation, the Board made a finding that the PA "failed to adequately meet the standard of care for one patient who presented to her for medical care." *Id.* And the Board and the PA agreed to a remedial plan that required the PA to complete additional continuing medical education. *Id.* at 5.

Moore also filed his lawsuit with the Court on January 14, 2019. Compl. (ECF No. 3). Moore sues only for noneconomic damages—pain and suffering resulting from his memory loss and hospitalization. After delays in service of Moore's lawsuit on the United States,[1] the Court entered a pretrial scheduling order on

---

[1] Moore did not properly serve all defendants in the case until February 10, 2021, after the District Court ordered service effectuated by the United States Marshal Service. Order 3 (ECF No. 27); *see* Proof of Service (ECF Nos. 30-32).

April 23, 2021. Sched. Order (ECF No. 43). Among other pretrial matters, the scheduling order established deadlines for discovery, expert-witness designation, and the filing of dispositive motions. Sched. Order 1-2. Discovery was to be completed by November 29, 2021; expert witnesses must have been designated by July 5, 2021, for parties with the burden of proof on a claim; and dispositive motions must have been filed by December 29, 2021. *Id.*

Moore failed to comply with the Court's scheduling order and the related Federal Rules of Civil Procedure. He did not serve initial disclosures on the United States. MSJ Reply 2 (ECF No. 56); *see* Fed. R. Civ. P. 26(a)(1). He did not serve any discovery requests. MSJ Reply 2; *see* Fed. R. Civ. P. 33, 34, 36. He did not take any depositions. MSJ Reply 2; *see* Fed. R. Civ. P. 30. He did not identify any persons with knowledge of relevant facts. MSJ Reply 2; *see* Fed. R. Civ. P. 26(a)(1)(i). He did not provide any calculations of damages. MSJ Reply 2; *see* Fed. R. Civ. P. 26(a)(1)(iii). He did not designate any expert witnesses. MSJ Reply 2; *see* Fed. R. Civ. P. 26(a)(2)(A), (D). He did not provide the United States with an expert report or any other sufficient expert disclosures. MSJ Reply 2; *see* Fed. R. Civ. P. 26(a)(2)(B)-(C). And the deadline for completing discovery expired.

On December 27, 2021, the United States filed its Motion for Summary Judgment arguing Moore is unable to provide necessary expert testimony to prevail on his FTCA claim. MSJ Br. 8-12; *see also* MSJ Reply 2. Moore responded, MSJ Resp. (ECF No. 55), and the United States replied, MSJ Reply (ECF No. 56). Accordingly, the Motion is ripe for determination.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A summary judgment movant bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant can satisfy its burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing Fed. R. Civ. P. 56(e); *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991)).

The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (Lindsay, J.) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Esquivel*, 2016 WL 6093327, at *2 (citing

*Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

Although the courts construe *pro se* litigants' pleadings liberally, *pro se* parties are not exempt from complying with the relevant rules of procedural and substantive law. *U.S. Bank, N.A. v. Richardson*, 2018 WL 5722680, at *3 (N.D. Tex. July 30, 2018) (Rutherford, J.) (citing *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law . . . . Rather, such a litigant acquiesces in and subjects himself to the established rules of practice and procedure.") (citations omitted)).

## Analysis

The United States is entitled to summary judgment because Moore cannot provide the required expert testimony to create a genuine issue of material fact in support of his FTCA claim.

Under the FTCA, Congress waived the United States' sovereign immunity for claims arising from certain torts committed by federal employees. *See* 28 U.S.C. §§ 1346(b)(1), 2671-80; s*ee also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). Specifically, the FTCA gives federal courts jurisdiction over claims against the United States for money damages "for injury . . . or personal injury . . .

caused by the negligent or wrongful act . . . any employee of the [United States] while acting within the scope of h[er] office or employment, under circumstances where the United States, if a private person, would be liable to the [plaintiff] in accordance with the law of the place *where the act . . . occurred.*" *Sheridan v. United States*, 487 U.S. 392, 398 (1988) (emphasis added) (quoting 28 U.S.C. § 1346(b)).

Here, Moore alleges he suffered an injury resulting from a Dallas VA's medical provider's medical negligence. In other words, Moore alleges a United States' employee acted negligently while acting in the scope of her employment under circumstances where the United States may be liable if the United States were a private person. Accordingly, the United States waived its sovereign immunity under the FTCA for Moore's claims.

To determine the substantive legal rules applicable to an FTCA plaintiff's claim, state law applies since the United States is to be held liable for allegedly tortious conduct "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see Edwards v. United States*, 519 F.2d 1137, 1139 (5th Cir. 1975) ("State law controls the issue of liability under the [FTCA]."). Moore complains of alleged negligence occurring at the Dallas VA in Texas. Therefore, Texas law applies. *See Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985).

Under Texas law, when a plaintiff alleges medical negligence, the plaintiff "bears the burden of proving (1) a duty by the . . . hospital to act according to an

7

applicable standard of care; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury." *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). The plaintiff must establish the standard of care as a threshold issue before a court may consider whether the defendant breached that standard. *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). Additionally, the plaintiff must establish a causal connection between the defendant's actions and the individual's injury "beyond the point of conjecture; proof of mere possibilities will not [suffice]." *Wackman v. Rubsamen*, 602 F.3d 391, 400 (5th Cir. 2010).

Unless the mode or form of treatment is a matter of common knowledge or is within the experience of a layperson, expert testimony is required to prove the applicable standard of care as well as its breach. *See Hannah*, 523 F.3d at 601–02; *Quijano*, 325 F.3d at 567. Expert testimony is also required to show that the breach proximately caused the harm suffered. *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005). A plaintiff must also rule out other plausible causes of the injury. *Wackman*, 602 F.3d at 400.

Subject to the narrow exception for matters of common knowledge, a plaintiff must produce expert testimony to meet his burden of proof on a malpractice claim. *Hannah*, 523 F.3d at 601; *see also Prindle v. United States*, 2011 WL 1869795, at *1-2 (N.D. Tex. May 13, 2011); *Woods v. United States*, 2010 WL 809601, at *3 (N.D. Tex. Mar. 8, 2010). Indeed, Texas law only excuses the requirement for expert testimony in cases of truly rare, obvious forms of

8

negligence. *See, e.g., Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990) (explaining that a plaintiff is excused from the requirement of expert testimony when the negligence was commonly understood, examples include improper use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body).

In this lawsuit, Moore has not identified any acts of rare, obvious forms of negligence that would excuse him from the requirement to prove his claim with expert testimony. Accordingly, Moore must produce medical-expert testimony to establish the applicable standard of care, as well as to create a genuine fact issue that the Dallas VA breached the standard of care, that Moore was injured, and that the breach caused his injury. But Moore has not come forward with medical-expert testimony to establish any of the essential elements of his negligence claim.

Moore contends the Texas Physician Assistant Board's remedial plan is sufficient to satisfy his burden to show the PA breached the applicable standard of care.[2]  *See* MSJ Resp. 1-2. It is not. Under Texas law, an expert report concerning the standard of care for a health care provider must be authored by one who qualifies as an expert. *Columbia N. Hills Hosp. v. Alvarez*, 382 S.W.3d 619, 625-26 (Tex. App.—Fort Worth 2012, pet. denied). To qualify as an expert, the person must be practicing in the field of practice as the health care provider that provided

---

[2] The Board's remedial plan lacks any reference to Moore. *See* Resp. App. 4-6. However, Moore also submitted a cover letter from the Board to Moore notifying Moore that "the investigation conducted in response to [his] complaint is now complete . . . and the Board has issued a remedial plan." *Id.* at 3.

9

the care to defendant; has knowledge of accepted standards of care for the diagnosis, care, or treatment of the condition involved in the claim; and is qualified on the basis of training or experience to offer an expert opinion regarding the accepted standards of health care. *See* Tex. Civ. Prac. & Rem. Code § 74.402(b). Moore has not shown that a qualified expert authored the Board's remedial plan.

Additionally, an expert report must contain a complete statement of all opinions the expert will express and the basis and reasons for them; the facts and data considered by the expert; any exhibits the expert relied on; the expert's qualifications including a list of all publications in the previous ten years; a list of cases where the expert testified as an expert for the last four years; and a statement of compensation being paid. Fed. R. Civ. P. 26(a)(2)(B)(i-vi). The Board's remedial plan states only that "[the PA] failed to adequately meet the standard of care for one patient who presented to her for medical care." Resp. App. 8. It lacks a discussion of the facts considered by the Board or any explanation for its conclusion that the PA breached the applicable standard of care. Indeed, the Board's remedial plan lacks all the elements required to qualify as an expert report. Finally, the Board's remedial plan does not address causation.

Without medical-expert testimony, Moore cannot meet his burden to create a genuine issue of material fact that the Dallas VA acted negligently in providing its medical diagnosis and treatment to Moore. Accordingly, the United States is entitled to summary judgment on Moore's FTCA claim.

10

## Recommendation

The District Court should GRANT the United States' Motion for Summary Judgment (ECF No. 49) and DISMISS Moore's claims with prejudice.

**SO RECOMMENDED.**

June 2, 2022.

                REBECCA RUTHERFORD
                UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).